**SIGNED THIS: May 27, 2015**

                                          **Thomas L. Perkins**
                                    **United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MICHAEL D. KIMBRELL and | ) | |
| JODY D. KIMBRELL, | ) | Case No. 14-81545 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| ANNA F. ISAACS, | ) | Case No. 14-81703 |
| | ) | |
| Debtor, | ) | |

**O P I N I O N**

This matter came before the Court for trial on April 24, 2015, on the Motion for Relief from Automatic Stay filed by Federal National Mortgage Association (FANNIE MAE), seeking to modify the stay to permit sale at foreclosure of a certain parcel of real estate located in an apartment complex known as JETH Court in Peoria, Illinois. The parcel in question is titled in the names of Jody Kimbrell, Michael Kimbrell and Anna Isaacs

(DEBTORS). The ownership interest of each DEBTOR is property of their bankruptcy estate.

The subject parcel, hereafter referred to as Parent Parcel A, is improved with a 5-unit apartment building located in part on a separate parcel of real estate. Approximately 3 ½ units of the building are located on Parent Parcel A while 1 ½ units sit on an adjacent parcel not subject to FANNIE MAE'S mortgage.

The Court previously granted relief from stay to permit FANNIE MAE to sell other JETH Court parcels of real estate at foreclosure sale, determining that because those parcels were owned by a limited liability company they were not property of the individual DEBTORS' estates. After crediting the bid prices for those parcels to its mortgage balance, the amount of $515,575.25 was still due FANNIE MAE as of December 15, 2014. Parent Parcel A is the only remaining collateral that secures this balance.

Testifying at trial for FANNIE MAE was Michael S. MaRous, a certified real estate appraiser holding an MAI designation with extensive experience appraising investment-grade real estate including apartment complexes. Mr. MaRous's Appraisal Report was admitted into evidence. The MaRous Report identifies the subject parcel as "Parent Parcel A" containing approximately 0.375 acre. The structural improvement identified as "Apartment Building C" is shown as being located partially on Parent Parcel A and partially on the adjacent parcel referred to as "Parent Parcel B." FANNIE MAE holds a mortgage on Parent Parcel A, but not Parent Parcel B, which is mortgaged to State Bank of Speer.

The MaRous Report further states that in 2011 Parent Parcel A and Parent Parcel B were combined to create a new Child Parcel, which was assigned the Property

2

Identification number 14-17-126-020. The Report states that the subject property of the appraisal includes the 0.375 acre identified as Parent Parcel A and the portion of Apartment Building C situated on that parcel, but does not include any portion of Parent Parcel B or the portion of Apartment Building C situated on that parcel.

The MaRous Report assigns a vacant land value to Parent Parcel A of $3.50 per square foot or $57,000 for the 0.375 acre. As for the structure, the Report uses the income capitalization approach and the sales comparison approach. The cost approach was deemed not relevant due to the fact that Parent Parcel A contains only a portion of Apartment Building C.

The MaRous Report calculates a preliminary value for Apartment Building C in its entirety, based upon the income capitalization approach, of $415,000. In "as is" condition, however, taking into account the hypothetical division of the building, the Report states an adjusted income capitalization approach value of $67,000.

Using the sales comparison approach, the Report established a unit value range of $70,000 to $75,000 per unit and a valuation for the entire building of $370,000. The value would be reduced to $222,000 for the property if rebuilt to include only the three full units located on Parent Parcel A. However, after making a 67% deduction for the "low likelihood of a market participant opting to purchase the subject property in its 'as is' condition," the opinion of value is reduced to $75,000. Reconciliation of the income capitalization approach value and the sales comparison approach value yields a final value conclusion of $70,000, according to the MaRous Report.

The DEBTORS did not call an appraiser or other expert to render an opinion of value and introduced no direct evidence of the value of the 0.375 acre. In the absence of

any competing evidence of value, the Court accepts Mr. MaRous's opinion that the value of Parent Parcel A as of November 17, 2014, is $70,000.

Most of the evidence presented by the DEBTORS at trial, all presented by Jody Kimbrell acting *pro se,* pertained to an alleged lot line discrepancy. Based upon Mrs. Kimbrell's arguments, she believes there is a 20 foot error or discrepancy with respect to the boundary line that establishes the northern border of the JETH Court property and the southern border of the Joanne Hills Subdivision, which is due north of and adjacent to the JETH Court property. This northern boundary line is not contiguous to Parent Parcel A, which lies well south of that line and is separated from that line by other parcels.

Jeffrey Franklin, a professional land surveyor employed by Austin Engineering, testified pursuant to a subpoena issued by Mrs. Kimbrell. Mr. Franklin acknowledged the existence of a question about the location of the southern boundary line of Joanne Hills Subdivision, as platted, as reflected on prior surveys. A May 13, 1998 plat of survey made by James R. Franklin (Jeffrey's father), shows that the south line of Joanne Hills section 2, as platted, encroaches onto the three northernmost lots of the JETH Court property. The possible encroachment is 20 feet wide at the northeast corner of JETH Court, diminishing in a straight line to zero at the northwest corner. Mr. Franklin's testimony indicated that this boundary line issue affects only the three northernmost lots in JETH Court and has no effect whatsoever on the parcel at issue here, Parent Parcel A.

Steven P. Arahood also testified pursuant to a subpoena issued by Mrs. Kimbrell. Mr. Arahood, a professional engineer employed by Maurer-Stutz, was asked by Mrs. Kimbrell to review the boundary line issue. He responded with a letter dated February 5,

2015, admitted into evidence, stating that a substantial effort would be required to provide a professional opinion. Nothing Mr. Arahood said at trial contradicts Mr. Franklin's testimony. Neither does Mr. Arahood's testimony provide a defense to FANNIE MAE'S motion or a reason to deny it.

Robert McQuellon, a licensed real estate broker, also testified pursuant to a subpoena issued by Mrs. Kimbrell. In response to a hypothetical question, he stated that the existence of a discrepancy in a parcel's lot line would adversely affect the owner's ability to sell the parcel. His testimony does not provide a defense to FANNIE MAE'S motion.

Mrs. Kimbrell also testified at trial as a *pro se* party in narrative format. Her testimony, much of which may only be taken as argument, concerned the Joanne Hills boundary line issue; a separate discrepancy involving certain frontage lots addressed in a 1999 quiet title action; various other surveys including a 2005 improvement survey by Zumwalt & Associates; her belief that a lack of a right of way for ingress and egress to Parent Parcel A would make it unsalable; a history of the litigation in state court, now on appeal, with FANNIE MAE; certain disputes she has with another lender, Republic Bank of Chicago; and her belief that the location of Apartment Building C is erroneously shown on one or more surveys or plats because it could not have been constructed over certain utility easements (this argument was not supported by any competent testimonial evidence).

Another potential witness, Bryan Hartman, appeared at trial, but was excused from testifying with the consent of the parties. Mrs. Kimbrell referred to an affidavit that Mr.

Hartman signed that is part of the record in FANNIE MAE'S state court foreclosure action, Peoria County Case No. 12 CH 97. In his affidavit, Mr. Hartman, a professional land surveyor, refers to a plat of survey that he performed on two tracts mortgaged to State Bank of Speer. The plat of survey evidences that Apartment Building C is bisected by the lot line separating Parent Parcel A from Parent Parcel B, a fact that is not in dispute. Mr. Hartman concludes his affidavit by stating that "[I]n my review of the recorded mortgages, deeds and easements, I also have noted that the surrounding tracts of land do not contain recorded easements for ingress and egress upon the current entrance to the development."

## **ANALYSIS**

With respect to the boundary line discrepancy, it appears that the owner of the three northernmost lots of the JETH Court property may have a claim to a small sliver of land that is presently part of Joanne Hills section 2, resolvable via a quiet title action. It is unequivocal, however, that the boundary line discrepancy does not affect Parent Parcel A in any way. Specifically, it has no affect on the legal description for Parent Parcel A and no affect on the location of Apartment Building C. Mrs. Kimbrell's theory that the Joanne Hills boundary line variance means that the location of Apartment Building C is incorrectly shown on the surveys (that the building "moves" 20 feet south) is not supported by any evidence or testimony and, in this Court's view, is patently nonsensical. Specifically, even if it could be established that the south line of Joanne Hills section 2 is erroneously platted and encroaches onto JETH Court's northernmost lots, that error would not be a defense to the motion or a reason to deny FANNIE MAE relief from the automatic stay. If the JETH Court owner prevailed in a lawsuit with the Joanne Hills property owners, the Joanne Hills

owners would lose a sliver of land they may have believed was theirs. If the Joanne Hills owners were to prevail, the JETH Court northernmost lots would be slightly smaller than previously thought. The dispute affects only those lots that are contiguous with the boundary line in question. No noncontiguous lots, including Parent Parcel A, would be affected no matter how the dispute is ultimately resolved. All of the evidence that was presented at trial relating to the boundary line variance has no relevance to FANNIE MAE'S stay relief motion.

FANNIE MAE argues for stay relief under three alternative provisions of section 362: subsections (d)(1), (2) and (4). The Court will first address the relief requested under section 362(d)(2), which provides that the court shall grant relief from stay:

> (2) with respect to a stay of an act against property under subsection (a) of this section, if —
>     (A) the debtor does not have an equity in such property; and
>     (B) such property is not necessary to an effective reorganization.

The party requesting stay relief has the burden of proof on the issue of the debtor's equity in property, while the party opposing such relief has the burden of proof on all other issues. 11 U.S.C. § 362(g).

FANNIE MAE has carried its burden to prove lack of equity in Parent Parcel A. It is undisputed that the remaining mortgage balance due FANNIE MAE as determined in the foreclosure action is $515,575.25 as of December 15, 2014. While the Court is aware that the foreclosure judgment has been appealed to the Illinois Appellate Court, enforcement of the judgment, including through sale of mortgaged real estate, has not been stayed. A judgment of foreclosure is a final judgment under Illinois law. *EMC Mortg. Corp. v. Kemp,* 2012 IL 113419, 982 N.E.2d 152 (Ill. 2012). A federal court must accord the same preclusive

effect to state court judgments as would be accorded by that state's courts. 28 U.S.C. § 1738. In Illinois, parties to a foreclosure action are collaterally estopped from relitigating issues determined in a judgment of foreclosure. *First Nat. Bank of Hoffman Estates v. Fabbrini,* 255 Ill.App.3d 99, 102, 627 N.E.2d 356 (Ill.App. 1 Dist. 1993).

The only evidence of value in the form of an expert opinion of value for Parent Parcel A is the opinion of Michael MaRous of a valuation of $70,000. Mr. MaRous made a significant downward adjustment because of the fact that only part of Apartment Building C sits on Parent Parcel A. Even without that downward adjustment, in Mr. MaRous's opinion, the sales comparison approach value of Apartment Building C plus the land value of Parent Parcel A is $427,000, substantially less than the remaining balance due on FANNIE MAE'S mortgage, even without considering State Bank of Speer's mortgage on Parent Parcel B. State Bank of Speer has filed Claim 10-1 in the amount of $787,542, secured by mortgages on two tracts of land located in the JETH Court development.

During closing argument, Mrs. Kimbrell made reference to a value of $850,000 for Apartment Building C. Nothing in the evidentiary record supports that assertion, so it must be disregarded. Based on the evidence in the record, the Court determines that FANNIE MAE has proved that the DEBTORS do not have equity in Parent Parcel A.

The companion issue is whether Parent Parcel A is necessary to an effective reorganization. For the property to be necessary for an effective reorganization, there must be a reasonable possibility of a successful reorganization within a reasonable time, and the property at issue must be required for the success of that reorganization. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 375-76, 108 S.Ct. 626, 632 (1988). A chapter 13 debtor must establish that a proposed plan to retain and pay for the

8

property in question is feasible, complies with all confirmation requirements, is likely to be confirmed, and that retention of the property is logically required for the success of the plan. *In re Simmons,* 446 B.R. 646, 649 (Bankr.S.D.Ga. 2010).  If the property to be retained is income producing property, the debtor must prove, at a minimum, that the projected income exceeds the projected expenses related to the property.  In other words, the property must generate a positive cash flow. *In re Mercado,* 523 B.R. 755 (1st Cir.BAP 2015).

The DEBTORS have failed to carry their burden to prove that retention of Apartment Building C is necessary for an effective reorganization.  No evidence was presented to demonstrate a positive case flow and the bankruptcy schedules filed by the DEBTORS are unclear. Based upon the MaRous appraisal, FANNIE MAE has a secured claim amount of $70,000 that would have to be paid in full over the term of the plans with interest at 5.25% at a minimum.  In addition, State Bank of Speer holds a secured claim on Apartment Building C that would also have to be paid with interest through the plans.

The current proposed plan in the Kimbrell case is the 4th Amended Plan filed as Document 319, proposing monthly payments of $765 for 60 months for a total of $45,900. The amount of the monthly payments is not supported by amended Schedules I and J filed concurrently with the 4th Amended Plan.  The amended schedules calculate monthly net income for the Kimbrells of only $244.  The current proposed plan in the Isaacs case is the 2nd Amended Plan filed as Document 86, proposing monthly payments of $150 for 36 months for a total of $5,400. The total combined payments in both plans fall far short of the amount needed to pay FANNIE MAE'S secured claim alone.  The DEBTORS have failed to prove feasibility.

9

The Court also recognizes that these bankruptcy cases are part of a larger dispute between these DEBTORS and several lenders that is ongoing in various proceedings pending in other courts. Mrs. Kimbrell has made it very clear that her goal is to get all of her property back, meaning all of the JETH Court property. That goal cannot be accomplished in these bankruptcy cases. FANNIE MAE has previously obtained relief from stay with respect to several other parcels that are part of the JETH Court development. Lifting the stay as to Parent Parcel A will shift the dispute back to state court where it may be addressed on the merits of the arguments made on appeal.

FANNIE MAE'S motion will be granted pursuant to section 362(d)(2). It is not necessary to consider the alternative grounds for relief under sections 362(d)(1) or (4). A separate Order will be entered. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

###